**E-Filed 1/19/11**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ERIKA CANAS, JOSE CANAS, a minor, by and through his guardian ad litem, and JESUS CANAS, a minor, by and through his guardian ad litem,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SUNNYVALE, CHRIS SEARLE, DARREN PANG, and DOES ONE through TWENTY-FIVE,<br><br>Defendants. | Case Number C 08-5771 JF (PSG)<br><br>**ORDER[1] GRANTING CITY'S MOTION TO DISMISS**<br><br>[Re: Docket No. 78] |

This action arises from the allegedly wrongful shooting death of Jose Francisco Canas ("the Decedent") by public safety officers of the City of Sunnyvale on September 12, 2007. The City moves to dismiss three claims in the Fifth Amended Complaint ("5AC") brought by the Decedent's wife, Erika Canas, and his two children, Jose and Jesus Canas (collectively, "Plaintiffs"). The Court has considered the complaint, the moving and responding papers, and the arguments of counsel presented at the hearing on January 7, 2011. For the reasons set forth below, the motion will be granted, without leave to amend.

---

[1] This disposition is not designated for publication in the official reports.

# I. FACTUAL BACKGROUND

Plaintiffs allege that at approximately noon on September 12, 2007, the Decedent left the apartment he shared with Plaintiffs with the intent to drive to work. (5AC ¶ 21.) They allege further that after he walked to his car (which was parked next to the curb outside the apartment), entered the car, buckled his seatbelt, started the car, and placed it in gear, the Decedent was shot in the head by Officers Searle and Pang. (*Id*.) Prior to the shooting, the officers, who were dressed in street clothes, allegedly approached the Decedent in an unmarked car and "did not adequately identify themselves or their instructions." (*Id*.) Plaintiffs allege that the Decedent was "shot from an angle behind his car," that the officers were not in front of the car when the Decedent was shot, and that the Decedent "was not accelerating his car in any unusual manner, but instead rolling forward slightly or not at all, and his car was still located adjacent to the curb." (*Id*.) Allegedly, the Decedent was unarmed, did not resist the officers, communicate with them verbally or physically, or otherwise act in any manner to induce the officers to use deadly force. (*Id*.)

Plaintiffs assert that "[a]t the time of the shooting of [the] Decedent . . . , [the officers] were attempting to make an arrest of [the] Decedent . . . , seize him, and search and seize his property" pursuant to a warrant they had obtained earlier. (*Id*.) They also claim that in obtaining the warrant, the officers "used falsified evidence, made material misrepresentations, and withheld material exculpatory information from the magistrate who issued the warrant." (5AC ¶ 30.) Apparently, the warrant arose from the stabbing death of Pablo Rosales, and Plaintiffs allege that the officers "fail[ed] to advise the magistrate that evidence existed that Jose Canas was not involved in the beating and stabbing of the victim." (*Id.*) They claim that the officers also failed to disclose that "the principal charging witness was not credible, and had provided inconsistent statements and changed his statement at the instigation of Defendants Chris Searle and Darren Pang, and that there was no credible evidence that Jose Canas was a present gang member despite representations to the Court that he was a gang member." (*Id.*) Finally, Plaintiffs allege that the officers were acting pursuant to policies or practices of the City, and that the City failed to provide adequate training to the officers to prepare them for the particular

duties they were discharging at the time they allegedly shot the decedent. (5AC ¶¶ 14, 15, 29, 32, 38, 40, 47, 50.)

## II. PROCEDURAL BACKGROUND

On December 26, 2007, Plaintiffs submitted administrative claims to the City pursuant to California Government Code § 945.4.  The City rejected the claims on May 28, 2008, prompting Plaintiffs to file a complaint five days later in the Santa Clara Superior Court.  Defendants removed the action to this Court and moved for dismissal for failure to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  On November 19, 2008, Plaintiffs voluntarily dismissed the complaint without prejudice, subsequently filing a second action in the state court.  Defendants again removed the action to this Court and again moved to dismiss pursuant to Rule 12(b)(6).  In response to that motion, Plaintiffs filed an amended pleading containing claims for negligence, negligent infliction of emotional distress, and civil rights violations.

Defendants moved to dismiss the amended pleading, and a motion hearing was held on May 1, 2009.  As a result of a misunderstanding, Plaintiffs filed their Second Amended Complaint ("SAC") on May 11, 2009, before the Court had issued an order on the motion.  In that order, which was issued on May 13, 2009, the Court identified several pleading deficiencies and concluded that Plaintiffs had failed to state any claim upon which relief might be granted.  However, because it seemed likely that Plaintiffs could state a viable claim, the Court also granted leave to amend.  Plaintiffs elected to treat the complaint filed on May 11 as their operative pleading.  Defendants then filed a third motion to dismiss.  In an order dated July 20, 2009, the Court again granted Defendants' motion with leave to amend "[b]ecause [the Plaintiffs'] well-pled allegations [were] insufficient to state any claim upon which relief may be granted," but noted that "[s]hould Plaintiffs allege th[e] underlying conduct [common to each claim] in greater detail, their individual claims might well prove legally sufficient." (Dkt. No. 38, at 6-7.)

On August 19, 2009, Plaintiffs filed their Third Amended Complaint ("TAC").  The Court granted Defendants' motion to dismiss that pleading with leave to amend in part, allowing

3

1  Plaintiffs to amend the complaint "to state facts sufficient to establish municipal liability . . .
2  [and] a Fourteenth Amendment claim based on the deprivation or violation of *Plaintiffs'* due
3  process rights." Dkt. 59 8:2-3, 9:18-19 (emphasis in original).  The Court also indicated that
4  Plaintiffs are not entitled to compensatory damages for a survival action and directed them to
5  correct their claim for violation of the Decedent's Fourth Amendment rights accordingly.  *Id.* at
6  11 n. 4.[2]

7  On September 27, 2010, Plaintiffs filed the operative Fifth Amended Complaint ("5AC")
8  alleging the following claims: (1) negligence, against the officers; (2) respondeat superior
9  liability against the City for the officers' negligence; (3) civil rights violations pursuant to 42
10 U.S.C. § 1983, for unreasonable search and seizure and excessive force in violation of the Fourth
11 Amendment[3]; (4) civil rights violations pursuant to 42 U.S.C. § 1983 in violation of the
12 Decedent's Fourth Amendment rights and Plaintiffs' Fourteenth Amendment rights; and (5) civil
13 rights violations pursuant to 42 U.S.C. § 1983 for unreasonable search and seizure.  Plaintiffs
14 allege also that the City is liable under *Monell v. New York City Dep't of Social Servs.*, 436 U.S.
15 658, 690-94 (1978) for maintaining one or more policies, practices, or customs that caused the
16 claimed constitutional violations.  The City now moves to dismiss the *Monell* claims.

### III. LEGAL STANDARD

18 Dismissal under Fed. R. Civ. P. 12(b)(6) "is appropriate only where the complaint lacks a
19 cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v.*
20 *Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  For purposes of a motion to
21 dismiss, the plaintiff's allegations are taken as true, and the court must construe the complaint in
22 the light most favorable to the plaintiff.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  At the
23 same time, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

---

[2] Plaintiffs filed a fourth amended complaint on April 15, 2010, and Defendants moved for dismissal.  However, the parties stipulated to dismissal of that pleading to permit Plaintiffs to attempt to state a claim for municipal liability under 42 U.S.C. § 1983.  The Court approved the stipulation on August 27, 2010.  Dkt. 73.

[3] Claims Three, Four, and Five are brought by Plaintiffs against all Defendants.

4

Case No. C 08-5771 JF (PSG)
ORDER GRANTING CITY'S MOTION TO DISMISS
(JFLC1)

detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  Thus, a court need not accept as true conclusory allegations, unreasonable inferences, legal characterizations, or unwarranted deductions of fact contained in the complaint. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-755 (9th Cir. 1994).

As the Supreme Court recently has clarified, a court must determine whether the well-pled facts in the complaint "*plausibly* give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) (emphasis added).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment.  *Lucas v. Dep't of Corrs.*, 66 F.3d 245, 248 (9th Cir. 1995).  When amendment would be futile, however, dismissal may be ordered with prejudice.  *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

## IV. DISCUSSION

**A.  Plaintiffs' Third Claim: Section 1983 Liability for Violation of Procedural Due Process**

Plaintiffs' third claim alleges that Defendants are liable under § 1983 for promulgating policies and/or customs that led to the deprivation of the Decedent's Fourth Amendment right to be free from unreasonable search and seizure. (5AC ¶¶ 14, 29, 32.)  In its previous dismissal order dated March 16, 2010, the Court recognized that California law permits Plaintiffs to bring a survival action based on the alleged denial of the Decedent's Fourth Amendment rights. (Dkt. 59 at 9-11.)  However, Plaintiffs' claim still is deficient as to the City.

**1.  Failure to Establish Municipal Liability**

As the Court has observed previously, municipalities "may be liable under § 1983 when the allegedly unconstitutional act stems from a municipal policy, decision or custom." *Del Conte v. San Francisco Police Dep't*, No. 06-05030, 2009 WL 2871052, at *2 (N.D. Cal. Sept.

1, 2009) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978)).  However, "[i]nadequate training can form the basis for municipal liability 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" *Mateyko v. Felix*, 924 F.2d 824, 826 (9th Cir. 1990) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

In support of their *Monell* claim, Plaintiffs allege the following:

the governmental entity defendants and their decision makers, with deliberate indifference, gross negligence, and reckless disregard to the safety, security, and constitutional and statutory rights of the Decedent, Plaintiffs, and all persons similarly situated, maintained, enforced, tolerated, permitted, acquiesced in, and applied policies, practices, or customs and usages of, among other things,

    a.    Subjecting people to unreasonable uses of force against their persons.

    b.    Selecting, retaining, and assigning employees with demonstrable propensities for excessive force, violence, and other misconduct;

    c.    Failing to adequately train, supervise, and control employees in the use of deadly force and the dangers of using deadly force;

    d.    Failing to adequately train, supervise, and control employees in the proper serving of an arrest warrant;

    e.    Failing to adequately discipline officers involved in misconduct; and

    f.    Condoning and encouraging officers in the belief that they can violate the rights of persons such as the decedent in this action with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits.  (5AC ¶ 14.)

Plaintiffs are informed and believe, and on the basis of such information and belief allege, that the entity defendants and their decision makers ordered, authorized, acquiesced in, tolerated, permitted or maintained custom and usage permitting the other defendants herein to engage in the unlawful and unconstitutional actions, policies, practices, and customs or usages set forth in the foregoing paragraph. Defendants' conduct as alleged herein constitutes a pattern of constitutional violations based either on a deliberate plan by defendants or on defendants', deliberate indifference, gross negligence, or reckless disregard to the safety, security, and rights of plaintiff and decedent. (5AC ¶ 15.)

Plaintiffs are informed and believe that official, *de facto* policies, customs or practices were the moving force behind the subject constitutional deprivations.  In addition to the officially sanctioned condoned and/or created customs listed above in ¶¶ 14a-f, Plaintiffs are informed and thereon alleged as follows:

- After Decedent was killed by Defendants Searle and Pang, Sunnyvale purported to conduct an investigation.
- The "investigation" done by Sunnyvale did not result in any discipline to those responsible for the mis-identification of Decedent, the falsely obtained warrant, the botched stake-out of Decedent, and the murder of Decedent. The murder–or police shooting–has been condoned and/or ratified by policy-making members of the City of Sunnyvale.
- Sunnyvale does not have a dedicated Police Department. Instead, Sunnyvale has long used a "Department of Public Safety." In June of 1950, the Sunnyvale City Council implemented the Department of Public Safety. The combining of police and fire services was expected to be more flexible and more responsive to community safety needs, and economize operational cost.
- The Sunnyvale Department of Public Safety has as its head Chief Don Johnson. Johnson sets official training policies and makes ultimate personnel decisions. Johnson ultimately did not terminate, or otherwise discipline Searle or Pang in connection with the murder of Jose Francisco Canas. In fact, Johnson and his command staff ratified and condoned said murder.
- The training required by Sunnyvale of each member of the Department of Public Safety is 14 months for fire, police, and emergency medical services. This dilution of training actually gives each member of the Sunnyvale Department less training in police work than POST standards. In addition, the impact on each of the three disciplines caused by this policy of diluted training has led and leads to less effectiveness in core skills.
- For example, both Searle and Pang underwent this 14-month training. In addition to their less than adequate police training, each received training as an EMT. When they shot Decedent Jose Francisco Canas, neither was able to revive or to assist Decedent in any meaningful way. Thus, the training provided by Sunnyvale pursuant to official, *de facto* customs, policies, or practices actually results in less effective and less competent police and medical services.
- The training and mixed disciplinary roles employed by Sunnyvale has, in part, caused excessive and over-zealous policing and less effective emergency medical services. While Sunnyvale touts itself as one of the safest cities of its size in America, this over-zealous policing by inadequately trained and supervised persons such as Searle and Pang has caused myriad constitutional deprivations to persons such as Decedent and Plaintiffs herein. (5AC ¶ 29.)

[Officers Searle and Pang]. . . acted consistent with the official policy, pattern and/or practice of the entity defendants and Defendants, and each of them, acting under color of state law, deprived the decedent of rights, privileges, and immunities secured by the Constitution and laws of the United States . . .

(5AC ¶ 32.)[4]

Despite the length of these allegations, the Court concludes that the facts alleged are insufficient to support a theory of municipal liability.  Although "[t]he Ninth Circuit has held that a bare allegation that individual officials' conduct conformed to official policy, custom, or practice suffices to plead a *Monell* claim in this circuit" *Carrea v. California*, No. 07-1148, 2010 WL 3984832, at *18 (C.D. Cal. Aug. 25, 2010); *see Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir.2007);  *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 624 (9th Cir.1988),  these cases no longer are controlling in the post-*Iqbal/Twombly* era.  The Supreme Court has indicated that, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" *Iqbal*, 129 S.Ct. at 1949-50; *see Young v. City of Visalia*, 687 F.Supp.2d 1141, 1149 (E.D.Cal. 2009) ("in light of *Iqbal*, it would seem that the prior Ninth Circuit pleading standard for *Monell* claims (i.e. 'bare allegations') is no longer viable.").

Although Plaintiffs have been litigating their claims for more than three years and have had several opportunities to amend, their *Monell* allegations still are conclusory in nature.  Other than alleging that the officers' EMT training was inadequate enable them to assist the Decedent after he was shot, Plaintiffs do not explain in detail *how* the City's alleged policies or customs are deficient, nor do they explain *how* the alleged policies or customs caused harm to Plaintiffs and the Decedent.  At most, the allegations permit the Court to infer a "mere possibility of misconduct" on behalf of the City.  *Iqbal*, 129 S.Ct. at 1950.  Fed. R. Civ. P. 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.*

Instead, the allegations are similar to those at issue in *Young v. City of Visalia.*  In that case, the district court granted the defendants' motion to dismiss in part because the plaintiff's *Monell* claim failed to meet the requisite pleading standards.  Like Plaintiffs in the instant action, the plaintiff in *Young* alleged liability based on inadequate training and hiring practices. [5]  The

---

[4] Plaintiffs repeat the allegations set forth in ¶¶ 29, 32 in support of their fourth and fifth claims as well. (5AC ¶¶ 38, 40, 47, 50.)  In addition, they incorporate by reference ¶14 in Claims Four and Five.

[5] The plaintiff alleged in relevant part that:
Defendants City of Visalia ... City of Farmersville ... are named herein for having

8

Case No. C 08-5771 JF (PSG)
ORDER GRANTING CITY'S MOTION TO DISMISS
(JFLC1)

court rejected the claim because the plaintiff did not explain *how* the alleged policies were deficient. In addition, the court indicated that "without identifying the training and hiring practices . . . and without an identification of the obviousness of the risk involved, the Court cannot determine if a plausible claim is made for deliberately indifferent conduct." 687 F.Supp.2d 1141, 1150.

Here, Plaintiffs allege no facts supporting their conclusion that the City maintains an official policy of subjecting people to the unreasonable use of force or failing to train employees adequately in the use of deadly force, nor do Plaintiffs explain how the alleged policies led Officers Searle and Pang to deprive the Decedent of his Fourth Amendment rights. Instead, Plaintiffs claim that improper training and mixed disciplinary roles stemming from the organizational structure of the Department of Public Safety led to the violation of the Decedent's right to procedural due process. (*See* 5AC ¶ 29.) However, the City argues persuasively that the practice of maintaining a department of public safety as opposed to a dedicated police department never has been held to amount to deliberate indifference and as such cannot provide a basis for municipal liability. (MTD at 10.)

In the Ninth Circuit, a plaintiff alleging a *Monell* claim based on inadequate training must show: (1) that the plaintiff was deprived of a constitutional right, (2) the municipality had a training policy that "amounts to deliberate indifference to the [constitutional] rights of the

---

> so knowingly failed to reasonably select and hire, and to reasonably well educate, instruct and train, and direct, supervise, control and discipline the conduct of its officers and supervisors, including the individual defendants named herein, in recurring situations such as are alleged herein, in which their officers', deputes' [sic], and supervisors' violations of the civil and statutory rights of individuals, including plaintiffs herein, were anticipated and could have been prevented by such selection and hiring, education, training, direction, supervision, control, and discipline, that [the Cities of Visalia and Farmersville] set in motion a chain of events that made the violations alleged herein foreseeable and substantially certain to occur. The actions and inactions of the [Cities of Visalia and Farmersville] were thus the moving force causing the violations alleged herein.

687 F.Supp.2d 1141, 1146-47.

persons' with whom [its police officers] are likely to come into contact;" and (3) that the constitutional injury would have been avoided had the municipality properly trained those officers. *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir.2007) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir.2001)).  "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Long v. City & County of Honolulu*, 511 F.3d 901, 907 (9th Cir.2007) (quoting *City of Canton Ohio v. Harris*, 489 U.S. at 389).  Deliberate indifference is shown when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010) (quoting *City of Canton*, 489 U.S. at 390).  Although Plaintiffs allege that the City provides less training in police work than is required by POST standards, they do not identify the relevant standards or otherwise explain how the City's policies result in "diluted training."  (*See* 5AC ¶ 29.)

To the extent that Plaintiffs' seek to establish municipal liability based on the theory that the City ratified the alleged unconstitutional conduct of the officers, the claim also fails to meet the *Iqbal* standard.  Plaintiffs' ratification claim appears to be based solely on the fact that the City's investigation did not result in disciplinary action against the officers.  (5AC ¶ 29.)  "To hold cities liable under section 1983 whenever policymakers fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle *respondeat superior* liability into section 1983 law. . ." *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992).  The Ninth Circuit explicitly has  "decline[d] to endorse this end run around *Monell*."  *Id.*

### 2. Improper Request for Relief

Plaintiffs continue to seek compensatory damages on their own behalf for the alleged deprivation of the Decedent's Fourth Amendment rights.  (5AC ¶ 33.)  However, the Court previously has determined that, because the survival action is brought on behalf of the Decedent, Plaintiffs are not entitled to such damages. *Id.*

**B.     Plaintiffs' Fourth Claim: Section 1983 Liability for Violation of Substantive and Procedural Due Process**

Plaintiffs' fourth claim is based upon both the Fourth and the Fourteenth Amendments. It is unclear whether Plaintiffs intend to bring a claim based on their own constitutional rights or those of the Decedent. They allege that Defendants' conduct "deprived the *Decedent* of rights . . . secured by the Fourth and Fourteenth Amendments . . . by, among other things, depriving *Plaintiffs* of their right to substantive due process guaranteed by the Fourteenth Amendment. . ." (5AC ¶ 40.) (emphasis added). In their opposition brief, Plaintiffs explain that the Decedent's claims should be analyzed under the Fourth Amendment and the Plaintiffs' claims should be analyzed under the Fourteenth. Opp. Br. at 6. Either way, the claims are deficient with respect to the City for the same reasons discussed in Section IV.A.1, above. In addition, to the extent that Plaintiffs seek liability based upon a Fourth Amendment violation, the claim is duplicative of Claim Three.

**C.     Plaintiffs' Fifth Claim: Section 1983 Liability for Unreasonable Search and Seizure**

Plaintiffs' fifth claim fails to identify the violation of a specific constitutional right. Plaintiffs appear to assert a procedural due process violation, claiming that the Decedent was deprived of "any right, privileges, and/or immunities secured by the Constitution and laws. . . . [and] of freedom from the use of excessive and unreasonable force during seizure." (5AC ¶ 50.) However, for the reasons discussed previously, this bare allegation is insufficient to support a *Monell* claim.

## V. CONCLUSION

Plaintiffs have had several opportunities to cure the deficiencies in their *Monell* claims, and it does not appear that further amendment is reasonably likely to result in viable claims against the City. Accordingly, the City's motion to dismiss Claims Three, Four, and Five as to the City is GRANTED WITHOUT LEAVE TO AMEND.

**IT IS SO ORDERED**.

DATED: January 19, 2011

_____
JEREMY FOGEL
United States District Judge

11