Gregory M. Fox, State Bar No. 070876
Arlene C. Helfrich, State Bar No. 096461
BERTRAND, FOX & ELLIOT
The Waterfront Building
2749 Hyde Street
San Francisco, California 94109
Telephone: (415) 353-0999
Facsimile:  (415) 353-0990

Attorneys for Defendants
CITY OF SUNNYVALE, CHRIS SEARLE and DARREN PANG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIKA CANAS, JOSE CANAS, a minor, by and through his guardian ad litem, and JESUS CANAS, by and through his guardian ad litem,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SUNNYVALE, CHRIS SEARLE, DARREN PANG and DOES ONE through TWENTY FIVE,<br><br>Defendants. | Case No. C08-05771 TEH<br><br>**DECLARATION OF ALEXANDER JASON IN SUPPORT OF CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:   July 23, 2012<br>Time:  10:00 a.m,.<br>Courtroom 2, 17th Floor<br><br>TRIAL DATE:  September 11, 2012<br><br>Honorable Thelton E. Henderson |

I, ALEXANDER JASON, hereby declare:

1.     I am Board Certified as a Senior Crime Scene Analyst with specialized training and experience in the reconstruction and analysis of shooting incidents. I am also certified in Force Science Analysis.

• I have been accepted as an expert in state and federal courts in California and 11 other states to provide expert testimony in crime scene reconstruction, shooting incident reconstruction, wound ballistics, and force science (the human dynamics related to shooting incidents.)

• I have performed analysis and reconstructions on more than 300 shooting incidents and I have been retained by U.S. Attorneys, U.S. Army Judge Advocate General, United States Department of State, and many other agencies to perform shooting analyses or training in shooting incident reconstruction.

- I have performed substantial research on the time and movement of persons involved in shooting incidents, the neuropsychological factors related the decisions to shoot, and the time dynamics relating to firearm operation and bullet travel.
- I am the author of a research paper published in a peer-reviewed journal on "Shooting Dynamics: Elements of Time and Movement in Shooting Incidents"
- I am currently a paid consultant to the U.S. Department of Justice performing reviews and providing recommendations on Federal funding of grants for new forensic science and crime scene investigation technologies and programs.
- I am a Fellow of the American Academy of Forensic Sciences, a member of the International Association for Identification, and a Technical Advisor to the Association of Firearm and Toolmark Examiners.
- I have made over 90 presentations to forensic science, law enforcement, prosecutor, and defense counsel groups and I have also been published in the F.B.I.'s forensic science journal. My qualifications, memberships, education, experience, and training is fully described in the attached C.V.

2. I have reviewed the complete Sunnyvale Police Department Incident Report 07-9165 which concerns the officer involved shooting of Jose Canas on September 12, 2007. I have also reviewed the accompanying video images taken by police personnel Ella, Chong and Chetcuti on their approach to the scene shortly after the shooting, three sets of scene photographs taken by Detective Chong, investigation diagrams prepared in conjunction with the incident investigation headed by Mark McLaughlin, the interviews with Detectives Pang, Searle and Simpson audio recorded on the day of the incident, and the diagrams prepared by Detectives Pang and Searle during their interviews on the date of the incident. I have reviewed the autopsy photographs and the Fire Incident Report. I have examined the surveillance van used by Detective Simpson during the event. I have visited the site of the incident. I have also read the statements, depositions and declarations of Detectives Pang and Searle.

3. The physical evidence at the scene is consistent with the description of events provided by Detectives Pang and Searle.

4. The following conclusions can be drawn with a reasonable degree of certainty from the physical evidence:

a. **The Canas vehicle accelerated suddenly to its left and into the street.** In the scene photograph attached as Exhibit L to the Declaration of David Chong an acceleration mark is present. This is consistent with the described initial location of the Canas vehicle, a front wheel drive 1995 Honda Civic, being parked at the curb. The presence of the acceleration mark is also consistent with the Canas vehicle having its front wheels turned severely to the left (towards the street) as it accelerated at a high rate away from the curb.

The sudden acceleration into the street is consistent with Detective Pang's description that he saw the vehicle " . . . lunge towards me. As it jerked forward, I jumped out of the way." (Pang declaration, Pg 4, Line 4) and that he heard the ". . . tires screech." (Pg 4, Line 8). The sudden acceleration is also consistent with Detective Searle's description that he ". . . observed the car lurch forward toward Detective Pang . . ." (Det. Searle declaration, Pg 4, Line 5) and the he ". . . heard screeching and acceleration of gas" and that " . . . the screeching Canas vehicle is coming at me." (Pg 4, Line 7).

b. **The exact path of the moving vehicle was not predictable**. When high acceleration causes the wheels to spin, the vehicle can fishtail or drift, . This can cause the vehicle to yaw and change its original direction very quickly which results in the drive path of the vehicle becoming unpredictable. Anyone standing near the vehicle could not be sure of exactly where the vehicle was going to be as it accelerated.

c. **The fired casing from Detective Searle's pistol is consistent with Det. Searle being in the street when he fired**. The fired casing from Det. Searle's pistol, shown at ID tag #2, Exhibit M to the Declaration of David Chong, was located in the street, approximately 8 feet from the curb just under Det. Pang's right passenger seat rocker panel. Det. Searle's pistol ejects to the right. The location of the fired cartridge casing is consistent with Det. Searle's shooting location being further into the street (North) than 8 feet. While the casing could have landed directly at its location, bounced and rolled to that location, or glanced off the vehicle, the location of the fired casing would not be consistent with Detective Searle firing a shot while on the south curb or at a location behind the rear of Detective Pang's vehicle (as shown in Exhibit M).

d. **Detective Searle walked in the street from a location behind the Canas vehicle to a location forward of the Canas vehicle**. Detective Pang, in his statement taken shortly after the incident,

3
DECLARATION OF ALEXANDER JASON IN SUPPORT OF CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

states that: "I was aware that Detective Searle was moving up along Canas' driver side, and toward the passenger side of my car, but I didn't know his exact position as I lost sight of him for a time in my peripheral vision."   This description is consistent with  Detective Searle moving towards Pang (towards the front of the decedent's car) and then passing Det. Pang, while still going towards the front of the vehicle, out of Pang's field of vision, placing Det. Searle in the street forward of the decedent's car.  It is also consistent with Det. Searle's description of his movements: "I began to walk towards Canas' driver's door with my gun in my hand pointed at Canas, . . .  I watched Detective Pang's movements and adjusting my movement forward, as I did not want to be across from him and have a cross-fire situation." (Det. Searle declaration, Pg 3, Lines 21-25)

e. **Detectives Pang and Searle were both wearing clothing that clearly identified them as police officers.** When the detectives approached Canas, they both wore a Sunnyvale Police Department pull-over sweatshirt with "POLICE" in 4 inch letters on their chest (and on the back, two lines: "Sunnyvale" in 2 inch high letters, and "POLICE" in 2.5 inch high letters) along with a Sunnyvale police badge insignia. In the MVAR video recording (Chong Unit 36) from the first marked police car to arrive on the scene, Det's Searle and Pang are visible wearing the SPD overshirts which match the SPD overshirts they are wearing in the still images (Exhibits  F and H) taken later.

f. **The Canas vehicle was closer to the shooting officers when the decision was made to fire:** There is an expected lag time between Det. Pang's decision to shoot and the location/position of the car when struck by the bullet.  While the speed of the car is not known, if it were 10 MPH, that means the car was moving approximately 15 feet in one second.  If Pang's lag time was 0.25 seconds, a typical latency period between a decision and a completion of a complex action, the car would have moved approximately four feet by the time the bullet struck.  (This same dynamic applies to Searle's decision to fire his handgun and his bullet strike).

g. **Detective Simpson had a restricted view of the incident:** After Detective Simpson moved from viewing the camera monitor in the surveillance van to observing Canas approach his Honda through the small window in the back of the van, Simpson had actual "tunnel vision": he was watching the events through a 5" x 5" window as shown in Exhibit N attached hereto, a photograph of the surveillance van window taken by me during my inspection of the van.  With such a limited field of

4
DECLARATION OF ALEXANDER JASON IN SUPPORT OF CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

view, he would not have been able to see everything.  There is also the recognized phenomenon of selective attention, well documented in cognitive psychology and force science analysis, and in such an incident, the observer will focus attention on a moving object and the main "actor" (in this incident, the car and the driver) and ignore the peripheral elements.

      h.      **Detective Searle's and Pang's actions are consistent with a restrained and controlled use of deadly force**.  Both officers fired only one shot.  Det. Pang had twelve live cartridges remaining in his pistol.  Det. Searle had eight live cartridges remaining in his pistol magazine.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my personal knowledge, except as to those matters which are stated upon information and belief, and as to those matters, I am informed and believe them to be true and correct.  If called as a witness, I could and would competently testify from my personal knowledge to the facts stated herein.

Executed this 18th day of June, 2012, at Pinole , California

_____
Alexander Jason