IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ERICA CANAS, et al.,

                  Plaintiffs,

      v.

CITY OF SUNNYVALE, et al.,

                  Defendants.

NO. C08-5771 TEH

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

This matter came before the Court on Defendants' motion for summary judgment, which was heard on July 23, 2012. For the reasons set forth below, the motion for summary judgment is GRANTED in part and DENIED in part.

**BACKGROUND**

On September 12, 2007, an officer of the Sunnyvale Department of Public Safety ("SDPS") shot and killed Jose Francisco Canas ("Canas") while attempting to execute a warrant for his arrest. Canas's widow and children ("Plaintiffs") have brought this suit under 42 U.S.C. § 1983 and California law against the City of Sunnyvale and SDPS officers Darren Pang and Christopher Searle.

The events which led to Canas's death are as follows. The SDPS identified Canas as a suspect in the August 17, 2007, murder of a man named Pablo Rosales and obtained a warrant for Canas's arrest. On the morning of September 12, 2007, a team of SDPS officers was dispatched to Canas's neighborhood to execute the warrant. At the time he was shot, Canas was in his car in front of his apartment. There were three SDPS officers present at the time of the shooting, Pang, Searle, and Scott Simpson, each of whom has provided a declaration describing his recollection of the incident. Plaintiff Erika Canas also witnessed the shooting of her husband.

United States District Court

For the Northern District of California

On the morning of Canas's death, Simpson was stationed in a surveillance van located across the street from the Canases' apartment.  Simpson observed Canas exiting his apartment and walking toward his car and notified Searle and Pang, who were waiting nearby.  As Canas reached his car, Pang pulled up in an unmarked car, which he parked such that the front bumpers of the two cars faced each other and Pang's driver's side door opened toward the curb.  Pang got out of his car and approached Canas's car with his gun pointed at Canas.  Around the same time as Pang arrived, Searle pulled up in an unmarked car, positioning his right front bumper approximately three feet from the left rear bumper of Canas's car.  After getting out of his car, Searle approached Canas's car on the driver's side.  Pang and Searle were in street clothes, but wearing dark blue jerseys with "POLICE" printed in large white letters across the front.

Pang recalls that he exited his car and approached the front of Canas's car.  Pang Decl. ¶ 9.  According to Pang, as he was crossing in front of Canas's car, Canas revved his engine and the car lunged forward towards Pang, causing him to jump out of the way in order to remove himself from the car's path.  Pang Decl. ¶¶ 10-11.  Pang reports that after jumping out of the path of Canas's car, he moved towards Canas's passenger-side door with his gun drawn.  Pang Decl. ¶ 11.  At that point, according to Pang, Canas cranked the steering wheel of his car to the left and floored the accelerator.  Pang Decl. ¶ 12.  Pang asserts that it was at that moment that he, believing that Searle was in danger of being struck by Canas's car, decided to take a single shot at Canas.  Pang Decl. ¶ 12.  Pang reports that after discharging his weapon, he heard a second shot and then observed Canas's car veer to the right, drive over the curb, and come to rest against a tree.  Pang Decl. ¶ 12.  Pang estimates that less than 15 seconds passed between when Pang exited his car and when Canas's car came to rest against the tree.  Pang Decl. ¶ 15.

Searle recalls that as he exited his car, he observed Pang exiting his car and moving toward the front of Canas's car with his gun drawn.  Searle Decl. ¶ 9.  Consistently with Pang's account, Searle reports that as Pang moved toward the front of Canas's car, Searle walked toward Canas's driver-side door, pointing his gun at Canas.  Searle Decl. ¶ 9.  Searle

also recalls that Canas's car then lurched forward toward Pang, forcing Pang to jump out of the way to avoid being hit by Canas's car, and then turned toward Searle, causing him to jump back toward his car to avoid being hit. Searle Decl. ¶ 10.

It is at this point that the officers' accounts of the sequence of events diverge. While Pang recalls firing his shot as Canas's car lurched toward Searle, Searle recalls hearing the "pop" of Pang's shot as the car started to drive away, after Searle jumped out of the car's path. Searle Decl. ¶ 10. Searle notes that he watched Pang fire his gun. Searle Decl. ¶ 10.

Searle recalls shooting at Canas as his car departed. Searle Decl. ¶ 11. According to Searle, he decided to fire at Canas because he thought that he "shouldn't let this guy go" because Searle "was afraid that [Canas] was going to seriously injure or kill someone to avoid apprehension at any cost." Searle Decl. ¶ 11.

Detective Simpson, who was in the surveillance van across the street from Canas's car, viewed the shooting of Canas through a very small window, with limited visibility. Simpson Decl. ¶ 3. Simpson reports that as Canas approached his car, he heard the screeching of brakes or tires from the two unmarked police cars, and then heard Canas start his engine. Simpson Decl. ¶ 9. According to Simpson, after Canas started his engine, Pang approached the passenger side of Canas's car with his gun pointed at Canas. Simpson then saw Canas crank the steering wheel to the left, in the direction of the street, and accelerate quickly. Simpson Decl. ¶ 10.

Simpson did not witness Canas's car lunging at Pang, as Pang and Searle described. He does not describe either Pang or Searle being almost hit by Canas's car; nor does he describe seeing the officers jumping out of the way. Simpson Decl. ¶ 10. Rather, Simpson recalls observing Canas's car pulling away from the curb and into the street, and then Pang pivoting towards the departing car as Searle came into view, in close proximity to Pang. Simpson Decl. ¶ 10-11. Simpson reports that he heard only one shot, and that at the moment the shot was fired, he saw Pang standing to the left of Searle while both officers pointed their

weapons in the direction of Canas's departing car.[1]  Simpson Decl. ¶ 11.  Canas's car was no longer in Simpson's limited view at the time he heard the shot.  Simpson Decl. ¶ 11.

An investigation of the shooting conducted by the Santa Clara County Crime Lab and the SDPS concluded that the bullet that killed Canas was from Pang's gun.  Pang's bullet entered Canas's car through the right rear passenger-side window traveling at a slightly downward angle.  Canas's autopsy showed that the bullet entered his head just above his right ear and exited through his left eye.  Investigators concluded that Searle's bullet did not strike Canas, but hit the right rear tail light of Canas's car, crossed through its trunk, and came to rest in its rear passenger compartment.

**LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*  The Court may not weigh the evidence and must view the evidence in the light most favorable to the nonmoving party.  *Id.* at 255.  The Court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.

A party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that "demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other

---

[1] Plaintiff Erika Canas, both in her deposition and in an interview she gave to a SDPS detective after the shooting, also described hearing only one shot, suggesting that the two shots may have been fired at the same time or in rapid succession.  Canas Depo. at 61; Canas Interview, Part I at 11-12.

United States District Court
For the Northern District of California

than for the moving party." *Soremekun v. Thrifty Payless*, *Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  On an issue for which the opponents of summary judgment will have the burden of proof at trial, the moving party can prevail merely by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  If the moving party meets its initial burden, the opposing party must "set out specific facts showing a genuine issue for trial" to defeat the motion.  Fed. R. Civ. P. 56(e)(2); *Anderson*, 477 U.S. at 256.

**DISCUSSION**

Plaintiffs' § 1983 claims against the City of Sunnyvale were dismissed in an order dated January 19, 2011.  Plaintiffs have stipulated to the dismissal of their Fourth Amendment claims based on allegations of misconduct in securing the warrant for Canas's arrest; those claims therefore will be dismissed.

Remaining are claims against Searle and Pang for the violation of Canas's Fourth Amendment right to be free from unreasonable seizure by excessive force and violation of Plaintiffs' familial association rights under the Fourteenth Amendment.  State law negligence claims against the officers and the City of Sunnyvale also remain.  Defendants have moved for summary judgment on all of the remaining claims.  Each claim will be discussed below.

**1. Federal Claims–Qualified Immunity**

Officers Pang and Searle argue that qualified immunity shields them from liability on Plaintiffs' constitutional claims.  Qualified immunity permits officers to avoid trial unless (1) the facts as shown by the plaintiff "make out a violation of a constitutional right;" and (2) "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009), quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

a. Fourth Amendment Claims

To state a claim under 42 U.S.C. § 1983 for a violation of the Fourth Amendment right to be free from the use of excessive force, a plaintiff must show: (1) that a seizure

5

occurred; and (2) that the force applied was objectively unreasonable under the circumstances. *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989); *Graham v. Connor*, 490 U.S. 386, 397 (1989).

Defendants argue that since Searle's bullet did not strike Canas and did not result in a restraint on his liberty, Searle did not effect a seizure of Canas. The Court agrees. A Fourth Amendment seizure occurs only when a fleeing person is physically touched by an officer or submits to an officer's show of authority. *California v. Hodari D.*, 499 U.S. 621 (1991); *Nelson v. City of Davis*, 685 F.3d 867, 874 n. 4 (9th Cir. 2012). "Attempted seizures of a person are beyond the scope of the Fourth Amendment," and are instead properly analyzed under the Due Process Clause of the Fourteenth Amendment. *County of Sacramento v. Lewis*, 523 U.S. 833, 845 & n. 7 (1998). Shooting at and hitting a car does not constitute a seizure of its driver if the shot does not result in a restraint on the driver's liberty. *See*, *e.g.*, *Rodriguez v. Passinault*, 637 F.3d 675 (6th Cir. 2011) (collecting cases); *Troupe v. Sarasota Cnty.*, 419 F.3d 1160, 1167 (11th Cir. 2005); *Latta v. Keryte*, 118 F.3d 693, 699-700 (10th Cir. 1997); *Cole v. Bone*, 993 F.2d 1328, 1332-33 (8th Cir. 1993). Plaintiffs have not adduced evidence on the basis of which a reasonable jury could conclude that Searle's shot resulted in a restraint on Canas's liberty. Searle's shot was fired after, or possibly simultaneously with, Pang's shot and did not hit Canas, but rather hit the right rear portion of Canas's car. Plaintiffs have not set out any facts indicating that Searle's shot disabled Canas's car or in any way caused Canas to submit to the officers' authority. Since Plaintiffs' facts do not indicate that a seizure occurred, Searle is entitled to summary judgment on Plaintiffs' Fourth Amendment claim against him.

Pang's bullet did strike Canas, constituting a seizure. *Hodari D.*, 499 U.S. at 644. Therefore, Plaintiffs can make out a Fourth Amendment violation, and satisfy the first prong of the qualified immunity analysis, if they can show that a reasonable jury could conclude that Pang's use of force was unreasonable. *See Pearson*, 555 U.S. at 232. The reasonableness of an officer's action is determined through an analysis of the totality of the circumstances, including "the severity of the crime at issue, whether the suspect poses an

6

immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

The Fourth Amendment prohibits a police officer from "seiz[ing] an unarmed, nondangerous suspect by shooting him dead." *Tennessee v. Garner*, 471 U.S. 1, 11 (1989). However, "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Id.* The Court's determination of the reasonableness of Pang's actions therefore turns on the factual question whether Pang had probable cause to believe that Canas posed a threat of serious physical harm to the officers or others at the time he was shot.

Viewing the facts in the light most favorable to Plaintiffs and drawing reasonable inferences therefrom in Plaintiffs' favor, it would be reasonable to find that Pang fired at Canas as Canas pulled his car into the street and began to drive away, with Searle standing in Pang's view and out of the path of Canas's car. The reasonableness of the use of deadly force is determined based on the circumstances present at the moment the force is deployed. *See Hopkins v. Andaya*, 958 F.2d 881, 887 (9th Cir. 1992); *McCaslin v. Wilkins*, 183 F.3d 775, 779 (8th Cir. 1999). Searle states in his declaration that at the moment that Pang fired at Canas, Canas's car was pulling away from the curb and into the street, and Simpson states that he heard a shot fired as Canas was driving off, when Canas's vehicle was no longer in Simpson's limited view.[2] The divergence between the accounts of Searle and Pang is highly material because this divergence arises with respect to whether Pang's shot was fired at a moment when Searle appeared to be in danger of being hit by Canas's car, or a moment when it should have been readily apparent to Pang that Searle was out of harm's way. Based on

---

[2] At the hearing held on this motion, defense counsel put forth the theory that Simpson observed only the late shot fired by Searle, and argued that Simpson's account therefore is consistent with Pang's. However, Simpson states in his declaration that he does not know whose shot he observed, and only notes that he heard a single shot, fired as Canas's vehicle was departing. Defense counsel's theory does not account for why Simpson would have heard Searle's shot and not Pang's. The shot Simpson heard could just as easily have been Pang's as Searle's, or the two officers could have fired at the same time or in rapid succession. On summary judgment, the Court, drawing the inferences from the facts stated in Simpson's declaration in Plaintiffs' favor, reads them as supporting the theory that Pang fired his gun as Canas was departing.

United States District Court

For the Northern District of California

the facts stated in the declarations of Searle and Simpson, a reasonable jury could conclude that Pang discharged his weapon after Canas pulled his car out into the street, and that Canas did not, at that moment, pose a threat of serious physical harm to the officers or others.

Turning to *Saucier*'s second prong, qualified immunity shields officers whose actions are constitutionally deficient but arise from a reasonable misapprehension of the law governing the circumstances in which officers find themselves. *Saucier*, 533 U.S. at 206. The focus of this inquiry is whether the officer had fair notice at the time that his conduct was unlawful—the reasonableness of the action, for the purpose of qualified immunity, is determined by what the clearly established law was at the time of the officer's act. *Maraziti v. First Interstate Bank of Cal.*, 953 F.2d 520, 523 (9th Cir.1992).

In the present case, the Court's determination whether, at the time of Pang's shooting of Canas, a reasonable officer would have understood that the shooting violated Canas's Fourth Amendment rights hinges on the factual determination whether it genuinely appeared to Pang that Searle was mortal danger at the time Pang fired his shot, or whether he fired the shot knowing that the danger had passed. In *Brosseau v. Haugen*, 543 U.S. 194 (2004) (per curiam), the Court held that an officer who shot "a disturbed felon, set on evading capture through vehicular flight, when persons in the immediate vicinity were at risk from that flight" was entitled to qualified immunity. *Id.* at 199. By contrast, in *Adams v. Speers*, 473 F.3d 989 (9th Cir. 2007), the court held that an officer who was alleged to have shot and killed the unarmed driver of a car while the car was rolling backwards, away from the officer, was not entitled to qualified immunity. *Id.* at 994; *see also McCaslin v. Wilkins*, 183 F.3d 775 (8th Cir. 1999) (holding that officer not entitled to qualified immunity where plaintiffs' evidence showed that police fired after truck that had slid off embankment); *Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756 (2d Cir. 2003) (holding that summary judgment on qualified immunity grounds was precluded by fact issue as to whether officer who shot at driver of moving vehicle was in vehicle's path).

Viewing the facts in the light most favorable to the Plaintiffs, at the time Pang shot Canas, Canas was driving away from Pang and Searle, and Pang knew that neither he nor

Searle was, at that moment, in danger of being hit by Canas's car. Under those circumstances, no reasonable officer would have believed that a threat existed that justified the use of deadly force under the clearly established law at the time. Therefore, summary judgment is not appropriate on Plaintiffs' Fourth Amendment claim against Pang.

### b. Claims Under the Fourteenth Amendment

Plaintiffs have also raised claims for violation of the right to familial association under the Due Process Clause of the Fourteenth Amendment. Such claims arise only when the violative action by an official "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (internal quotation marks and citation omitted). "In determining whether this type of excessive force shocks the conscience, the court must first ask whether the circumstances are such that actual deliberation [by the officer] is practical." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010) (internal quotation marks and citation omitted). When harmful actions result from circumstances that demand an officer's instant judgment, the actions of the officer must have some "purpose to harm [the suspect] without regard to legitimate law enforcement objectives," in order to rise to the level of being arbitrary or conscience shocking. *Porter v. Osborn*, 546 F.3d 1131, 1133 (9th Cir. 2008).

The unrelated-purpose standard applies to the facts of the present case. All witnesses describe a quickly evolving situation, in which the officers had no opportunity for deliberation. Relying on a declaration by their expert, Roger Clark, Plaintiffs contend that the purpose to harm standard does not apply because the officers acted recklessly and deliberately when they placed themselves in the path of Canas's car.[3] Be that as it may, it is apparent that the shooting of Canas resulted from circumstances demanding Pang's and Searle's instant judgment. Therefore, to state a Fourteenth Amendment claim, Plaintiffs

---

[3] Defendants object to the submission of Clark's declaration, as it was filed two days after the date on which it was due. The Court finds this transgression to be *de minimis* and therefore overrules Defendants' objection to the inclusion of this statement. The Court cautions Plaintiffs, however, to take more care in their adherence to the rules and deadlines established by this Court, as repeated transgressions of this nature will not be tolerated.

1    must show that a reasonable jury could conclude that the officers acted with a purpose to

2    harm Canas.

3         Plaintiffs have not put forward any evidence from which it could be reasonably

4    inferred that Pang or Searle acted with a purpose to harm Canas.  Clark concludes in his

5    declaration that Pang and Searle unreasonably increased the likelihood that they would need

6    to use lethal force by conducting themselves in a manner that was "below the established

7    basic professional standards" for police officers; Clark does not, however, suggest that Pang

8    and Searle acted with a purpose unrelated to legitimate law enforcement objectives when

9    they shot at Canas.  Summary judgment will therefore be granted on Plaintiffs' Fourteenth

10   Amendment claims.

11

12   **2. State Law Claims**

13        Defendants argue that they are entitled to summary judgment on Plaintiffs' negligence

14   claims.  In order to prevail in an action for negligence under California law, "the plaintiff

15   must demonstrate that the defendant owed a duty to the plaintiff, that the defendant breached

16   that duty and that the breach proximately caused the plaintiff's injuries."  *John B. v. Superior

17   Court*, 38 Cal.4th 1177, 1188 (2006).  California courts recognize a duty to exercise

18   reasonable care in deciding to use deadly force.  *Grudt v. City of Los Angeles*, 468 P.2d 825,

19   831 (Cal. 1970); *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1101 (2004).  This

20   reasonableness standard is the same standard that applies in Fourth Amendment excessive

21   force claims.  *See Morales v. City of Delano*, 2012 WL 484188 at *20 (E.D. Cal. 2012).

22        In the present case, the breach alleged is the officers' use of force.  As determined

23   above, viewing the facts in the light most favorable to Plaintiffs, the Court cannot say that

24   Pang exercised reasonable care in deciding to use deadly force against Canas.  Searle, who

25   admits to having shot at Canas as Canas's car pulled into the street and started to drive away,

26   and does not claim that he believed that either he or Pang was in danger of serious physical

27   harm at the time he fired his shot, is likewise not entitled to summary judgment.  A

28   hypothetical or unspecified danger to individuals not in the immediate vicinity is insufficient

to warrant the use of deadly force. *Cf. Brosseau*, 543 U.S. at 199-201.  Therefore, summary judgment on Plaintiffs' negligence claims will be denied.

The City of Sunnyvale's liability is coextensive with that of Pang and Searle.  Under California law, in contrast to federal law, government entities may be held  liable for the negligent acts of their employees under a *respondeat superior* theory.  *Robinson v. Solano Cnty.*, 278 F.3d 1007 (9th Cir. 2002).  Cal. Gov't Code § 815.2(a) provides:

> A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

It is undisputed that Pang and Searle were acting within the scope of their employment at the time of Canas's death.  Therefore, summary judgment will also be denied on Plaintiffs' *respondeat superior* claim against the City of Sunnyvale.

**CONCLUSION**

For the reasons stated above, the motion for summary judgment is GRANTED on Plaintiffs' Fourteenth Amendment claims and Plaintiffs' Fourth Amendment claim against Searle.  Summary judgment is DENIED with respect to the Fourth Amendment Claim against Pang, the negligence claims against Pang and Searle, and the respondent *superior claim* against the City of Sunnyvale.  The claim resting on an allegation of material misrepresentations in the warrant application is DISMISSED WITH PREJUDICE, by consent of Plaintiffs.

**IT IS SO ORDERED.**

Dated:        08/23/12

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

11